**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**DEAN APPRAISAL COMPANY,**

**Plaintiff,**

**Case No. 04-74454**

**v.**

**HONORABLE DENISE PAGE HOOD**

**FIRST PENN-PACIFIC LIFE INSURANCE COMPANY,**

**Defendant.**
**_________________________________________/**

**OPINION AND ORDER REGARDING MOTIONS FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

This matter is before the Court on Plaintiff's Motion for Summary Judgment, Defendant's Motion for Summary Judgment and Plaintiff's Cross Motion for Summary Judgment. Plaintiff filed a Motion for Summary Judgment on July 12, 2005. Defendant filed a Response on August 2, 2005. Defendant filed a Supplemental Brief in Response on September 21, 2005. Plaintiff filed a Reply on August 18, 2005. Plaintiff withdrew the Motion for Summary Judgment on October 12, 2005. Plaintiff requested reinstatement of the Motion for Summary Judgment on December 16, 2005. Defendant filed a Motion for Summary Judgment on September 16, 2005. Plaintiff filed a Response and Cross Motion for Summary Judgment on October 7, 2005. Defendant filed a Reply on October 27, 2005.

## II. STATEMENT OF FACTS

Jay L. Messer ("the decedent") was an employee and owner of the Plaintiff, Dean Appraisal Company. (Compl. ¶ 7). On July 31, 2001 an application for life insurance benefits, concerning the life of the decedent, was submitted to the Defendant, First Penn-Pacific Life Insurance Company. *Id.* ¶ 8. Plaintiff issued a check to the Defendant as payment of the premium for life insurance on October 11, 2001. *Id.* ¶ 9. Defendant issued a policy on the life of the decedent ('the policy") on October 13, 2001. *Id.* ¶ 10. Plaintiff is the beneficiary of the policy. *Id.* ¶ 11. Plaintiff continued to pay the premiums on the policy until the death of the decedent. *Id.* ¶ 14. The decedent signed Part One of the application for insurance on July 31, 2001, (Def.'s Mot. Summ. J., Ex. B), and the second part on September 20, 2001. *Id.*, Ex. C. Between September 10, 2001 and October 10, 2001 the decedent underwent a number of medical examinations, treatments, and consultations. *Id.*, Ex. D, and E. On October 11, 2001 the policy was delivered to and accepted by the decedent. *Id.*, Ex. A. The decedent died of tongue cancer on March 3, 2003. *Id.*, Ex. F. Defendant sent a letter to the Plaintiff's attorney, Michael Zipser, on April 15, 2004, indicating that it was rescinding the policy based on the decedent's change in health between the date of the application and date of acceptance of the policy. (Pl.'s Cross Mot. Summ. J., Ex. 5). The Complaint was filed on November 15, 2004.

## III. STANDARD OF REVIEW

The standard that must be satisfied to secure a dismissal via summary judgment is high. Pursuant to Rule 56(c), summary judgment may only be granted in cases where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The moving party bears the burden of showing no dispute as to any

material issue. *Equal Employment Opportunity Comm'n v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086, 1093 (6th Cir. 1974). A dispute must be evident from the evidence in order to deny such a motion. Such a dispute must not merely rest upon the allegations or denials in the pleadings, but instead must be established by affidavits or other documentary evidence. Fed.R.Civ.P. 56(e). When ruling, the Court must consider the admissible evidence in the light most favorable to the non-moving party. *Sagan v. United States of Am.*, 342 F.3d 493, 497 (6th Cir. 2003).

## IV. APPLICABLE LAW & ANALYSIS

### A. Plaintiff's Motion for Summary Judgment

Plaintiff claims that its Motion for Summary Judgment should be granted "because there is no dispute that the subject contract was entered into or that it has never been rescinded by Defendant." (Pl.'s Mot. For Summ. J. at 13). The parties do not dispute the existence of a contract. The parties disagree, however, about whether or not the contract was rescinded by the Defendant.

An agent may take action on behalf of the company where he has been given actual or apparent authority by the company. *Barry v. Boston Marine Ins. Co.*, 62 Mich. 424, 427 (1886). An agent of an insurance company may be authorized to rescind the actions of the principal. *Hartford Fire Ins. Co. v. Reynolds*, 36 Mich. 502, (1877). A nonparty to a contract cannot bind the contract. *EEOC v. Frank's Nursery*, 177 F.3d 448, 460 (6th Cir. 1999).

Plaintiff states that Susan Duffy, Senior Claim Examiner for Lincoln National Life Insurance Company, admitted that there was no evidence that the Defendant ever rescinded the policy. (Pl.'s Mot. Summ. J. at 13). Plaintiff provides transcripts of Ms. Duffy's deposition to support the contention that Defendant never rescinded the policy. Ms. Duffy testified:

> Q. Can you show me any records indicating that First Penn-Pacific Life Insurance Company ever rescinded the insurance contract between Mr.

Messer and First Penn-Pacific Life?

A. No....

Q. What evidence do you have, if any, indicating that First-Penn Pacific Life Insurance Company rescinded the insurance contract it had regarding the life of Mr. Messer?

A. None.

(Pl.'s Mot. Summ. J., Ex. 9 at 167).

Plaintiff further argues that the Defendant did not clearly and unambiguously rescind the contract as required. (Pl.'s Reply at 2). Defendant asserts that the insurance policy was rescinded by Lincoln National Life Insurance Company ("Lincoln National"), an agent of the Defendant with actual authority to cancel or rescind life insurance policies on behalf of the Defendant. (Def.'s Resp. at 9-10). Lincoln National Life Insurance Company has been an authorized agent of the Defendant and acts as the administrative agent for the Defendant since July, 2002. (Def.'s Resp., Exs. 5 and 6). Lincoln National has had actual authority from the Defendant to process and administer all claims relating to Defendant's life insurance policies since that date. *Id.* Defendant claims that Plaintiff was well aware that Lincoln National was an agent of the Defendant. (Def.'s Resp. at 12-14; Exs. 11-25). Defendant submits affidavits from the Director of Life Claims for Lincoln National and the Vice President and Chief Underwriter for the Defendant, both of whom testified that the Defendant is and has been an affiliate, since July of 2002, of Lincoln National and that Lincoln National is an authorized agent for the Defendant. (Def.'s Resp. Exs. 5-6). Defendant's Exhibits 11 through 25 include: the first page of the policy indicating that the Defendant is an affiliate of Lincoln National; several emails from Ms. Duffy, an employee of Lincoln National, to representatives of the Plaintiffs regarding Mr. Messer's policy; claimant statements signed by Kenneth Blondell, one of the Plaintiff's principals; medical authorizations, by the Plaintiff, for the release of health information to Lincoln National; the April 15, 2004 rescission letter by Lincoln

National indicating the Defendant as the issuing company; and a check in the amount of the premium from the Defendant that indicates that the Defendant is a "member of Lincoln Financial Group." (Def.'s Resp. Exs. 11-25). Defendant further asserts that the Plaintiff was aware that Lincoln National rescinded the policy on behalf of First Penn-Pacific. *Id.* at 14. Anthony Sanna, principal and Managing Director for the Plaintiff, testified:

> Q. And attorney Zipser told you that the policy had been rescinded?
> A. Yes.
> Q. And you understood it was the First Penn-Pacific policy insuring the life of Jay Messer?
> A. That's what I assume.

(Def.'s Resp., Ex. 10 at 91). Mr. Sanna further testified:

> Q. Now, what was your understanding of why you were receiving a check back from First Penn-Pacific?
> A. Well, because First Penn-Pacific was not going to pay the claim.
> Q. Did you ever ask attorney Zipser why First Penn-Pacific had rescinded the policy?
> A. Well, we know that it was because of First Penn's belief or Lincoln National, whoever the insurance seems to be that dictates the policy, that there had been a change in health from the application.
> Q. Change of health between what and what?
> A. Between the application process and the delivery process. We didn't seem to think so, but obviously we're not doctors.
> Q. And based on that rating First Penn-Pacific rescinded the policy as your understanding, right?
> A. I'm not sure if that's the only reason, but that's part of the reason.
> Q. What other reasons do you understand?
> A. I don't know.

*Id.* at 92-93.

Examining the evidence submitted by the parties, no genuine issues of material fact exist as to whether or not Lincoln National rescinded and had authority on behalf of the Defendant to rescind the insurance contract between the parties.

**B. Defendant's Motion for Summary Judgment**

Defendant requests that the Court grant its Motion for Summary Judgment, stating that a binding insurance contract never existed as the decedent failed to satisfy an unambiguous condition precedent. Defendant further argues even if the policy was binding, the decedent's failure to disclose changes in his health between the date of his application and delivery and acceptance of the policy are material misrepresentations that allow the Defendant to rescind the policy. Plaintiff argues that the decedent satisfied all the conditions of the contract and that he never asserted his state of health at any given time.

An insurance contract is not binding until all of the conditions and terms of the agreement are satisfied. *Shah v. Royal Maccabees Life Ins. Co.*, 2000 WL 33539448, *1 (Mich.App. 2000). Agreements that excuse the performance of a contract until a condition precedent[1] is fulfilled are enforceable under Michigan law. *Martin v. Transamerica Occidental Life Ins. Co.*, 2002 WL 1041337, *4 (E.D. Mich, 2002), citing *Sharrar v. Wayne Sav. Ass'n*, 246 Mich. 225, 228-229 (1929).

Defendants assert that the Policy includes three conditions precedent, (1) delivery and acceptance of the Policy; (2) payment of the first premium; and (3) no change in the health of the decedent between time of the application and acceptance of the policy. Plaintiffs claim, however, that the Policy only includes the first two conditions precedent, namely delivery and acceptance of the Policy and payment of the first premium. The Policy language reads:

Unless the policy becomes effective as specified in the Conditional Receipt attached

[1] "A condition precedent is a condition that is to be performed before the agreement becomes effective, and which calls for the happening of some event or the performance of some act after the terms of the contract have been arrested on, before the contract shall be binding on the parties." *Green v. Perkins*, 2004 WL 2389192, *2, fn. 2, citing Black's Law Dictionary (6th ed, 1990), p 293.

> to this application, the First Penn-Pacific will incur no liability until: a. any policy applied for has been delivered to and accepted by me; and b. the first premium is paid. *When I accept the policy, the state of health of the proposed insured or any other factor which affects insurability must be the same as set forth in this application.*

(Def.'s Mot. Summ. J., Ex. B) (emphasis added). Based on the express language of the policy, there are three conditions precedent, (1) the delivery and acceptance of the Policy, (2) payment of the first premium, and (3) no change in state of health between the time of the application and the acceptance of the Policy.

The Defendant next argues that it was clear that the decedent's health status was not the same at the time of delivery and acceptance of the Policy. Plaintiff contends the contract is not clear as to who the Policy is delivered to and accepted by and the meaning of the term "accept." Plaintiff further argues that the decedent did not assert his "state of health" at any particular time and therefore could not have had a change in health.

Plaintiff's argument regarding the meaning of the policy language, is inconsistent with its interests in pursuing the current action. Plaintiff argues that it is not clear who the Policy is to be delivered to and accepted by and that the meaning of the terms delivery and acceptance are ambiguous and should be construed in a light more favorable to the policyholder. This argument is flawed, however, in that if the Policy was never delivered or accepted by the decedent, then the Policy never took effect, and as such the Defendant could not incur any liability for failing to perform. The language of the Policy clearly provides that the Policy must be delivered and accepted by the decedent. (Def.'s Mot. Summ. J, Ex. B). The Policy language is not ambiguous and must be construed as written.

Plaintiff then argues that the decedent did not assert a state of health at any given time, and

therefore his health status could not have changed between the time of delivery and acceptance of the Policy. In Part One of the application, decedent provided answers to several questions under a section entitled "Health Statement." (Def.'s Mot. Summ. J., Ex. B). One question specifically asked whether not the decedent had been told by a medical professional that he had cancer. *Id.* Part Two of the application consisted almost entirely of questions regarding the decedent's health and medical history. *Id.*, Ex. C. Furthermore, the decedent acknowledged that his answers were true, complete statements. The decedent signed Part One of the application, which read:

> I understand and agree that:... I have read the statements and answers in this application. To the best of my knowledge and belief, they are true, complete, and correctly stated. They will be the basis for any policy issued based on this application.

*Id.*, Ex. B. The decedent also signed Part Two of the application, which stated:

> All statements and answers to the foregoing questions in this Part Two application are, to the best of my knowledge and belief, true, complete, and correctly stated. I agree that a copy of this Part II shall be attached to and form part of any policy issued based on my application.

*Id.*, Ex. C. The answers, provided by the decedent, as well as the decedent's agreement that the provided answers were true, correct statements, indicate that the decedent did make a statement of health in both Part One and Two of the application.

Plaintiff finally argues that the Defendant does not have any evidence to indicate that the decedent's health changed between the date of completion of the application and the date of acceptance. In support of this contention Plaintiff provides Ms. Duffy's deposition testimony that the decedent did not make any misrepresentations in the application process, that there was nothing in the policy to indicate where to send updated health information, and that there was no obligation to forward updated health information. Ms. Duffy testified:

Q. Now, in this particular case with Mr. Messer, is it your contention or your company's contention that there was any misrepresentation made by Mr. Messer as it relates to information he provided in the application process?
MR. BISHOFF: By that you mean omission when you say misrepresentation?
BY MR. KOHL:
Q. Any False statements that he made?
A. No.
Q. In your handling of this claim, are you aware of any false statements made by anyone, Mr. Messer, Mr. Tripp, Dean Appraisal people or any medical people?
A. No.

(Pl.'s Resp., Ex. 4, pp 55-56). Ms. Duffy further testified that as of July 31, 2001 and September 20, 2001 the decedent did not provide any information that was inaccurate or untruthful, *Id.*, at 63-64, and that the decedent made accurate representations at the time the application was filled out. *Id.*, at 108-109.

Part One of the application was signed on July 31, 2001. (Def.'s Mot. Summ. J., Ex. B). The second part of the application is dated September 20, 2001. *Id.* at Ex. C. On September 10, 2001, the decedent telephoned Dr. Jeffery Klein complaining of a sore throat and ear pressure. (Def.'s Mot. Summ. J, Ex. D, p. 10). Dr. Klein prescribed Erythromycin[2] for the symptoms. *Id.* The decedent did not disclose his medical concerns or his treatment in either part of the application. On September 17, 2001, the decedent complained to Dr. Klein that the symptoms were worse and that his lymph nodes were swollen. *Id.* at 10-11. On September 24, 2001, the decedent was examined by Dr. Klein. *Id.* at 12. Decedent was then complaining of cold like symptoms. *Id.* Dr. Klein testified that he felt a mass on the left side of the decedent's neck. *Id.* Dr. Klein testified that

[2]Erythromycin is an antibiotic which is used to treat antibacterial activity. *Medline Plus, Merriam Webster* (last updated February 4, 2003). <http://www2.merriam-webster.com/cgi-bin/mwmednlm>.

he referred the decedent to Dr. Anil Gupta. *Id.* Dr. Klein testified that he informed the decedent that he should get both a chest x-ray and blood work. *Id.* at 15. The decedent had the chest x-ray on September 24, 2001. *Id.* at 16.

On September 25, 2001, Dr. Gupta examined the decedent. (Def.'s Mot. Summ. J., Ex. E at 9). The decedent was complaining of upper neck pressure, discomfort and pain with swallowing. *Id.* at 8-9. Dr. Gupta examined the decedent on October 3, 2001, at which point Dr. Gupta observed two lumps on either side of the decedent's neck. *Id.* Dr. Gupta explained the findings to the decedent at that time. *Id.* Dr. Gupta performed a fiberoptic examination, to visually check for tumors and masses. *Id.* at 13-14. Dr. Gupta diagnosed the decedent with lymphadenopathy.[3] *Id.* Dr. Gupta testified that he discussed the diagnosis with the decedent. *Id.*

A CT scan of the decedent's neck was conducted on October 5, 2001. (Def.'s Mot. Summ. J., Ex. E at 11-17. A soft tissue mass was discovered that same day. *Id.* On October 10, 2003 a fine needle aspirate was performed on the decedent. *Id.* Dr. Gupta also ordered a MRI on the decedent's neck and a CT scan on the decedent's chest. *Id.* at 17-19. Dr. Gupta testified that he discussed each procedure with the decedent. *Id.* at 19.

The policy was delivered to and accepted by the decedent on October 11, 2001. (Def.'s Mot. Summ. J, Ex. A, p. 57). The premium was also paid on October 11, 2001. *Id.* at 59. The decedent did not mention his health when the policy was delivered and accepted. *Id.* at 61.

Parts One and Two of the application ask questions regarding (1) consultation, examination and treatment by a physician, (Def.'s Mot. Summ. J., Ex. B), (2) cancer or other malignant disorder,

---

[3]Lymphadenopathy is an abnormal enlargement of the lymph nodes. *Medline Plus, Merriam Webster* (last updated February 4, 2003). <http://www2.merriam-webster.com/cgi-bin/mwmednlm?book=Medical&va=lymphadenopathy>.

(Def.'s Mot. Summ. J, Ex. C), (3) any disease or disorder of the eyes, ears, nose or throat, *Id*, and (4) any diagnostic test. *Id*. The decedent had the majority of the above examinations, treatments, and consultations after signing Part Two of the application. The decedent was not diagnosed with tongue cancer until after he signed both parts of the application. However, the answers to each one of the relevant questions was different by the date of delivery and acceptance of the policy.

The evidence indicates that there is no genuine issue of material fact. Plaintiff's proffered evidence merely shows that the decedent did not misrepresent himself in either part of the application process. It does not, however, provide any proof that the decedent did not have a change in his health status between the date of the application and the date of delivery and acceptance. The evidence provided by the Defendant shows several consultations, examinations and treatments that were performed after the signing of the application and the date of delivery and acceptance. As such, the answers to each one of the above specifically named questions were different by the date of delivery and acceptance.

As the decedent's state of health changed between the date of the application and the date of delivery and acceptance, all of the conditions precedent of the Policy were not met. Pursuant to Michigan law, *Shah*, 2000 WL 33539448, *1, since all of the conditions of the Policy were not met the contract is not binding on the Defendant, and the Defendant is entitled to judgment as a matter of law.

**C. Plaintiff's Cross Motion for Summary Judgment**

In its Cross Motion for Summary Judgment, Plaintiff claims that the Defendant is estopped from maintaining the defenses used here, and that the rescission letter sent by the Defendant was defective.

When an insurance company has refused payment, after a loss has occurred, the company is required to fully apprise the insured of all the defenses it intends to rely on. *Smith v. Mutual Fire Ins. Co.*, 234 Mich. 119, 122-123 (Mich. 1926). Failure to state such defenses is in effect a waiver, estopping the insurance company from maintaining any defenses on the policy other than those of which it has given the insured notice. *Id.*

Plaintiff first argues that the Defendant cannot maintain the defenses used in the present case because the Defendant failed to give the Plaintiff notice of the defenses. Plaintiff states that the defenses were not raised since the rescission letter did not specifically name the Defendant, but rather named Lincoln National. As the Court has already determined that Lincoln National was an agent of the Defendant, Plaintiff's first argument is without merit. Furthermore the language of the rescission letter clearly provides the defenses relied upon by the Defendant. The letter reads:

> During our investigation, medical records obtained revealed that *Mr. Messer had a change of health between the time of application and the time of delivery*, which was previously undisclosed.
>
> The Underwriting Department of Lincoln National Life Insurance Company ("Lincoln") has reviewed these medical records. They have advised us that *had Lincoln been aware of this change in health, Mr. Messer's policy would have not been issued*.
>
> Accordingly, based on the facts outlined above, our final decision is to rescind the policy, which is appropriate and supportable under Michigan law....
>
> Be advised that Lincoln National Life Insurance Company's *grounds for rescission are based on information presently known to Lincoln*....
>
> Lincoln National Life Insurance does not intend to waive any rights or defenses to conduct additional inquiries should this claim be reconsidered based upon new information, nor does Lincoln waive any rights or defenses with regard to the contract or applicable law.
>
> Lincoln National Life Insurance Company reserves all rights to assert additional grounds for rescission, if and after such grounds come to Lincoln's attention.

(Pl.'s Cross Mot. Summ. J, Ex. 5) (emphasis added). As stated in the letter, the policy was rescinded due to the change in decedent's health status between the date of the application and the date of acceptance.

Plaintiff next argues that the rescission letter was defective as it references a change in health between the date of the application and the date of acceptance. Plaintiff argues that the change in health status is irrelevant to whether insurance coverage existed. As discussed above, the change in health is relevant to such determination as consistency in the health of the decedent between the application date and the date of delivery is a condition precedent to the performance of the Policy. Since the Court has already determined that the policy was not binding as all of the conditions were not performed, the Plaintiff's final argument is also without merit, and is denied.

Plaintiff has not shown that it is entitled to judgment as a matter of law, and as such its Cross Motion for Summary Judgment is denied.

Accordingly,

IT IS ORDERED that Plaintiff's Motion for Summary Judgment **[Docket No. 12, filed July 12, 2005]** is DENIED.

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment **[Docket No. 20, filed September 16, 2005]** is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Cross Motion for Summary Judgment **[Docket No. 22, filed October 7, 2005]** is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Leave to File Reply Brief **[Docket No. 18, filed August 18, 2005]** is GRANTED.

IT IS FURTHER ORDERED that Defendant's Motion for Leave to File Supplemental

Response Brief in Opposition to Plaintiff's Motion for Summary Judgment **[Docket No. 21, filed September 21, 2005]** is GRANTED.

IT IS FURTHER ORDERED that the Complaint is DISMISSED WITH PREJUDICE.

/s/ Denise Page Hood
DENISE PAGE HOOD
United States District Judge

DATED: March 30, 2006

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 30, 2006, by electronic and/or ordinary mail.

s/William F. Lewis
Case Manager